IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GEORGE CHRISTOPHER STEPHENS,    )
                                )
            Plaintiff,           )
                                )
    v.                           )    1:21CV54
                                )
OFFICER KERTSETTER and          )
OFFICER MORENO,                  )
                                )
            Defendant.           )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court upon Plaintiff George Stephen's Motion for Summary Judgment. (Docket Entry 35.) Defendant Officer Kerstetter[1] filed a Response in Opposition (Docket Entry 40). For the reasons that follow, the undersigned will recommend that Plaintiff's Motion for Summary Judgment be denied.

I.  BACKGROUND

Plaintiff, a *pro se* prisoner, filed this action alleging an excessive force claim against Defendants Officer Kerstetter, Officer Moreno, and Lieutenant Bullard in their individual and official capacities regarding an incident that occurred while he was housed at Scotland Correctional Institution on June 26, 2019. (*See* Compl., Docket Entry 2.)[2] More specifically,

---

[1] Defendant Kerstetter's name is spelled two ways in court documents: Kerstetter and Kertsetter. The undersigned will use Kerstetter, as that is the usage utilized in Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. (Docket Entry 40.)

[2] Unless otherwise noted, all citations in this recommendation to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

he alleges that Defendants Moreno and Kerstetter entered his cell around 3:30 am on June 26, 2019, and began "to beat me maliciously without warning, and for no other reason then (sic) the fact that I had been accused of exposing myself indecently to a fellow officer . . . within a prior incident." (*Id.* at 5, 15.) After the alleged beating, Plaintiff contends that he was taken by the officers to Lieutenant Bullard, and the three men escorted Plaintiff down a set of stairs. While descending the stairs, Plaintiff claims that Defendant Bullard stated, "I bet you won't pull your d*** out on another one of my staff!" (*Id.* at 15.) Bullard then stated, "This never happened, right? If you agree this never happened, go on back up stairs." (*Id.*) Later that morning, Plaintiff states he received medical attention for the injuries sustained during the beating. (*Id.* at 16.) His medical reports indicate that he had a hematoma above his left eye eyebrow and redness along the right side of his nose and right ear. (Docket Entry 40-1 at 32.) He also reported pain to his left forearm and left jaw. (*Id.*)

Plaintiff contends that before he was allowed to return to his cell, he was told that he had to sign "consent documents." (Docket Entry 2 at 17.) Plaintiff furthers claims he later spoke to two other officers about the incident, Captain Gause and Jerry Ingram. (*Id.*) Plaintiff alleges that Defendants violated the Cruel and Unusual Punishment clauses of both the U.S. Constitution and North Carolina State Constitution. (*Id.* at 3.)

Summons were issued and returned executed for all three Defendants.[3] (*See* Docket Entry 4, 6, 7, 8.) Plaintiff subsequently filed a Motion to Amend Complaint (Docket Entry

---

[3] As to Defendant Moreno, in Defendant Kerstetter's Memorandum in Support of Motion to Set Aside Entry of Default and in Opposition to Motion for Default Judgment (Docket Entry 16), counsel for Defendant Kerstetter states that "[t]ypically, when a current employee of NCDPS is sued, the matter is forwarded to . . . the Attorney General's Office [and then to] counsel." (Docket Entry 16 at 2.) However, for unknown reasons, this matter was not referred to the Attorney General's office

2

25), which sought to dismiss Defendant Bullard from the action due to his death. (*Id.*) The Court construed the document as a voluntary dismissal of Defendant Bullard and granted the motion. (*See* Text Order dated 01/27/2023.)

II.   DISCUSSION

After discovery, Plaintiff moved for summary judgment, realleging his claims from the Complaint and arguing that there are no genuine issues of material fact which support Plaintiff's claim of an alleged violation of his constitutional rights. (Docket Entry 35.) Plaintiff specifically questions several discovery issues. First, he questions why surveillance video from the time of the incident only shows the officers escorting Plaintiff in the stairwell and no video has been produced of the alleged incident. (*See* Docket Entry 36 at 8.) Plaintiff alleges that the video was tampered with by the correctional institution. (*See id.*)

Next, Plaintiff questions several of Defendant Kerstetter's discovery responses. (*See id.* at 9-29.) Most of his argument focuses on Defendant Kerstetter's allegation about the lights in Plaintiff's cell and whether they were turned on or off. (*See id.* at 9-14.) He also takes issue with Defendant Kerstetter's responses that indicate he does not have sufficient

---

and "Officer Moreno left NCDPS' employment in September 2020." (*Id.*) Further, all three summonses were sent to the Scotland Correctional Institution, and the returned Certificates of Services only indicate that the "US Marshalls Service" received the summons, not that the individual Defendants personally received them. (*Id.* at 1-2.) Defendant Kerstetter's counsel states that "it is highly unlikely that [Moreno] was placed on notice" because his summons was mailed after Moreno left the correctional institution's employ. (*Id* at 2.) Further, Plaintiff moved for entry of default against all Defendants, which the Court entered pursuant to Federal Rule of Civil Procedure 55(a). (Docket Entries 10, 11.) Plaintiff then moved for default judgment against Defendants. (Docket Entries 12, 23.) The Court set aside the entry of default as to Defendant Kerstetter and denied the motion for default judgment against Defendant Moreno as premature and because of the interrelatedness of the Defendants' claims as they may pertain to qualified and governmental immunity. (Docket Entry 19 at 5-6.)

Case 1:21-cv-00054-CCE-JLW   Document 44   Filed 01/18/24   Page 3 of 8

knowledge to admit or deny that Plaintiff suffered injuries as a result of the incident. (*See id.* at 16-19.)

Defendant Kerstetter filed a Response in Opposition to Plaintiff's Motion for Summary Judgment. (Docket Entry 40.) In pertinent part, Defendant Kerstetter states that "this case boils down [to] a classic "he said, they said . . . that prevents the granting of summary judgment for either party." (*Id.* at 1.) Defendant Kerstetter claims that during a routine search of Plaintiff's cell, "Plaintiff jumped from his bunk startled, stumbled, and fell to the floor." (*Id.* at 3.) Defendant Kerstetter then claims that Plaintiff refused medical treatment and was taken back to his cell. (*Id.*) The following morning, he claims that Plaintiff alleged that he had been assaulted and he subsequently received medical care. (*Id.* at 3-4.) Defendant Kerstetter further argues that Plaintiff's issues with the surveillance video, cell lighting and other policy violations are immaterial to the summary judgment analysis. (*Id.* at 7-9.) He also states that because Plaintiff's summary judgment motion was filed after the deadline, it should be denied. (*Id.* at 6.) Since both parties recount the incident differently, Defendant alleges that there are still genuine issue of material facts that are in dispute, and thus summary judgment should not be granted. (*Id.* at 6-7.)

a. **Standard of Review**

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir.

4

1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met her burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear her burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making a summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49.

b. **Excessive Force**

Defendant Kerstetter denies using excessive force against Plaintiff. (Docket 40-2 at 2.) Instead, he claims that Plaintiff's injuries were the result of a fall from his bunk. (*Id.*) Claims of excessive force resulting from an attempt to subdue a convicted prisoner are governed by the Eighth Amendment's prohibition of cruel and unusual punishment. *Graham v. Connor*, 490 U.S. 386, 394 (1989). "The Eighth Amendment protects prisoners from unnecessary and

wanton infliction of pain." *Thompson v. Commonwealth of Va.*, 878 F.3d 89, 97 (4th Cir. 2017) (internal quotations omitted). Prison officials have an "affirmative obligation to take reasonable measures to guarantee [inmate's] safety." *Id.* (internal quotations omitted). Accordingly, when evaluating an excessive force claim, the Court "must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 98 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). To make this determination, the Court considers two elements: "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).

The objective component

> focuses not on the severity of any injuries inflicted, but rather on "the nature of the force," which must be "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (citing *Hudson* [503 U.S. at 7]); *cf. Wilkins*, 559 U.S. at 37 (explaining that the extent of injury suffered may indirectly "provide some indication of the amount of force applied"). Not every "malevolent touch by a prison guard" is necessarily a constitutional violation. *Hudson*, 503 U.S. at 9. The Eighth Amendment "excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 10 [internal quotation and citation omitted].

*Garris v. Gober*, No. 1:10-CV-504, 2013 WL 4502261, at *1 (M.D.N.C. Aug. 22, 2013), *aff'd*, 554 F. App'x 211 (4th Cir. 2014). In other words, "there is no 'significant injury' threshold to sustain an excessive force claim because a de minimis injury, if the product of malicious and sadistic use of force, can sustain the claim." *Parker v. Stevenson*, 625 F. App'x 196, 198 (4th Cir. 2015) (quoting *Wilkins*, 559 U.S. at 37-38).

6

As for the subjective component, "[t]he state of mind required in excessive force claims is "wantonness in the infliction of pain."" *Iko*, 535 at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). The Supreme Court has set forth a list of non-exclusive factors to assist courts in determining whether an officer has acted with wantonness: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Id.* (citing *Whitley*, 475 U.S. at 321) (internal quotations omitted). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

Here, considering the facts in light most favorable to Defendant, there are genuine issues of material fact as to whether excessive force was used by Defendants Kerstetter and Moreno during the June 26, 2019 incident. Defendant Kerstetter argues that Plaintiff's injuries were the result of a fall, but Plaintiff asserts they were the result of an assault. Clearly, there are genuine issue of material fact that have not yet been resolved. Even the matters which Plaintiff discusses in his summary judgment brief implicate the discrepancies between Plaintiff and Defendant Kerstetter's stories.

Ultimately, Plaintiff's submissions in support of his motion for summary judgment are insufficient to meet his burden at this juncture. His motion for summary judgment on the issue of excessive force should therefore be denied.

7

### III. CONCLUSION

For the reasons sated herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Docket Entry 35) be **DENIED**.

/s/ Joe L. Webster<br>
United States Magistrate Judge

January 18, 2024
Durham, North Carolina